CITY OF NASSAU BAY, Appellant,

v.

CITY OF WEBSTER et al., Appellees.

No. 17691.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 22, 1980.

Rehearing Denied June 26, 1980.

McConnico, Gregg & Jones, Dick Gregg, Houston, for appellant.

Edward A. Cazares, City Atty., James Dougherty, Asst. City Atty., Sears & Burns, Robert L. Burns, Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

The City of Nassau Bay appeals from a summary judgment declaring its annexation ordinance No. 77–194 void, ousting it from all claim of municipal authority over the area purportedly annexed, and permanently enjoining it from claiming any such authority. In three points of error, Nassau Bay complains 1) that the trial court lacked jurisdiction to enter its order because the State of Texas was not a party to the suit,

2) that summary judgment was improper because a material fact issue was raised, and 3) that the ordinance was passed under constitutional, statutory, and charter authority and was therefore valid. The specific statutory authority relied on is V.A. C.S., Articles 1183 through 1187, which authorize annexation for limited purposes of certain land along navigable streams.

The appellees, the City of Webster and the City of Houston, respectively the plaintiff and intervenor below, respond that the attempted annexation is void because the subject area is within their extraterritorial jurisdictions under the provisions of V.A. C.S., Article 970a, the Municipal Annexation Act. Appellees also contend that Articles 1183–1187 are not applicable to Nassau Bay because it is not a city acting under "special charter"; that although the ordinance purports to annex the land for the limited purposes of Articles 1183–1187, it in fact attempts to annex the area for all purposes and thus was adopted fraudulently and in violation of the provisions of Article 970a; and that some of the territory described in the ordinance lies within the existing corporate limits of Webster.

The judgment of the trial court is affirmed.

Webster was incorporated under the general laws in 1958. Nassau Bay was incorporated under the general laws in 1970, and in 1973 it adopted a home rule charter. On June 13, 1977, Nassau Bay, acting through its city council, passed Ordinance No. 77–194, purporting to annex certain property along Cow Bayou. Nassau Bay concedes that the territory described in the ordinance was within the extra territorial jurisdictions of Webster and Houston, pursuant to Article 970a, but Nassau Bay contends that the area was also within its extraterritorial jurisdiction and that Article 970a is not controlling since the ordinance was enacted solely under authority of Articles 1183–1187.

Webster brought this suit to have Ordinance No. 77–194 declared void, to oust Nassau Bay from any claim over the disputed area, and to permanently enjoin Nassau Bay from attempting to exercise municipal authority over it. Houston intervened, substantially adopting Webster's positions, and both cities moved for summary judgment. The trial court granted the motions and all the relief requested.

In its first point of error, Nassau Bay complains that the district court had no jurisdiction over the proceedings because the State of Texas was not a party. It points out that a city annexation ordinance, unless void, can be questioned only by direct suit in the nature of a quo warranto proceeding or in a proceeding to which the State of Texas is a party. *Hoffman v. Elliott*, 476 S.W.2d 845 (Tex.1972); *City of Wichita Falls v. Bowen*, 143 Tex. 45, 50, 182 S.W.2d 695, 698 (1944). Since the primary contention of the appellees is precisely that the ordinance *is* void, and since several of the allegations in their petition, if proved, would demonstrate that the ordinance is void *ab initio* and not merely voidable for irregularities in its adoption, the trial court did have jurisdiction to hear the suit. *Deacon v. City of Euless*, 405 S.W.2d 59 (Tex. 1966); *City of Duncanville v. City of Woodland Hills*, 484 S.W.2d 111 (Tex.Civ.App. 1972, writ ref. n. r. e. at Tex., 489 S.W.2d 557); *City of Houston v. Harris County Eastex Oaks Water and Sewer District*, 438 S.W.2d 941 (Tex.Civ.App.1969, writ ref. n. r. e.).

The first point of error is overruled.

In its second point Nassau Bay complains that the trial court erred in granting summary judgment because a fact issue was raised regarding the navigability of Cow Bayou. The pleadings, including the motions for summary judgment and Nassau Bay's answer, do present such a fact issue, as was recognized by the trial judge in a letter to the parties declaring his intention to grant the summary judgment. However, the existence of a disputed fact issue is immaterial; the ordinance was void *ab initio* because Nassau Bay had no authority to adopt it.

In its third point of error, Nassau Bay asserts that Ordinance No. 77–194 is valid

because it was enacted under constitutional, statutory, and charter authority, citing Article 11, § 5 of the Texas Constitution; V.A.C.S., Articles 1183–1187; and Article 2, § 2.01 of the Charter of the City of Nassau Bay.

Article 11, § 5 of the Constitution grants broad authority to home rule cities; their powers can only be limited by provisions of their own charters or of the Constitution or the general laws. In this instance there is no limitation in either the Constitution or the charter, and Nassau Bay contends that the authority which it claims under Articles 1183 through 1187 is not limited by the provisions of Article 970a.

■■■■ Nassau Bay concedes that the territory purportedly annexed lies within the extraterritorial jurisdiction of Webster and Houston [1] and that those cities did not and do not give their consent to Nassau Bay's purported annexation. Article 970a, Sec. 3.C., clearly states that "[t]he extraterritorial jurisdiction of a city shall not be reduced without the written consent of the governing body of such city . . .." See also *City of Duncanville v. City of Woodland Hills*, supra.

Nassau Bay contends, however, that Article 970a does not affect its power of annexation under Articles 1183–1187, and therein lies the heart of the controversy. As Nassau Bay correctly points out, when the Municipal Annexation Act was enacted it included a savings clause which expressly provided that it did not "repeal or affect Article 1183 to Article 1187 . . . nor apply to any territories held by any city or town under the provisions of said Articles . .." We do not interpret that language to exempt a city acting under Article 1183 from the requirement imposed by Article 970a that it first obtain the consent of an affected city when attempting to annex territory within the other's extraterritorial jurisdiction.

Articles 1184, 1186, and 1187–1 grant to a city which has acted under Article 1183 certain limited powers over the land outside its ordinary boundaries but within the navigation area annexed. These include the power to secure land by condemnation; to regulate navigation, wharfage, and "all facilities, conveniences and aids to wharfage or navigation"; to police navigation and the use of the wharves and other facilities; and to designate all or part of the area as an industrial district. The latter power includes the right to enter into contracts with landowners in the industrial district so as to guarantee that the land will retain its "limited purpose annexation status" for up to ten years and be immune during that time from general purpose annexation.

In addition, Article 1187 has been interpreted by our appellate courts to confer exclusive jurisdiction over the specially annexed area, with the result that other cities may not annex portions of the navigation area, and new cities may not be incorporated there. *City of Galena Park v. City of Houston*, 133 S.W.2d 162 (Tex.Civ.App.1939, writ ref.); *Houston Endowment, Inc. v. City of Houston*, 468 S.W.2d 540 (Tex.Civ. App.1971, writ ref. n. r. e.); *City of Houston v. Houston Endowment, Inc.*, 428 S.W.2d 706 (Tex.Civ.App.1968, writ ref. n. r. e.).

Article 970a grants a city powers within its extraterritorial jurisdiction much like the powers just described. Section 4 allows

---

1. Nassau Bay contends that the territory lies also within its own extraterritorial jurisdiction. Houston and Webster, however, deny that Nassau Bay ever had any extraterritorial jurisdiction over the disputed area, alleging that when Nassau Bay was incorporated all of the disputed area was already subject to their own exclusive jurisdiction. If this is so, there is yet another, independent reason for affirming the judgment of the trial court. A home rule city may only annex territory that is "adjacent" to it and not a part of any other city. Article

1175, V.A.C.S.; *City of Irving v. Dallas County Flood Control District*, 383 S.W.2d 571 (Tex. 1964); *State ex rel. Pan American Production Co. v. Texas City*, 157 Tex. 450, 303 S.W.2d 780 (1957). Since "territory within the exclusive extraterritorial jurisdiction of one city is not adjacent to any other city as a matter of law," *City of Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex.1975), Nassau Bay would be precluded from annexing the territory in question for any purpose.

the city to extend its subdivision ordinance and to establish "rules and regulations governing plats and the subdivision of land." Section 5 grants a power to designate industrial districts which is virtually identical to the power granted by Article 1187–1, except that the period of immunity is shortened to seven years. Section 8 allows the city to limit—or prevent—the incorporation of other cities within its extraterritorial jurisdiction, and Section 7 likewise prevents other cities from annexing any part of the territory.

It thus appears that the power of a city over the area within its extraterritorial jurisdiction under Article 970a is similar to the powers granted by Articles 1183–1187 over territory within the navigation area. If Nassau Bay's construction of the savings clause is accepted, it would be possible for two separate cities to have jurisdiction over the same area. City *A*, acting under Article 970a, might prescribe a layout of streets and building lots utterly inconsistent with the establishment of wharfage facilities contemplated by City *B*, acting under Articles 1183–1187. Moreover, neither city could exclude the other's limited purpose jurisdiction, but either could prevent the other from annexing the area for general purposes.

■ This would not only be a strange result, a result which could not have been intended by the legislature, but it would also be in violation of the settled principle that "[t]wo municipal corporations cannot exercise the same general governmental authority over the same area." *City of El Paso v. State ex rel. Town of Ascarate*, 209 S.W.2d 989 (Tex.Civ.App.1947, writ ref.); *City of Galena Park v. City of Houston*, supra. Fortunately, this result is not required when the two competing statutes are read in harmony.

■ Articles 970a and 1183–1187 can be reasonably construed so as to avoid the fatal conflict described above. We conclude that the savings clause in Article 970a was meant to exempt navigation areas *already annexed* from encroachment by another city's extraterritorial jurisdiction and to ex-empt otherwise valid navigation annexations from the various restrictions imposed by Article 970a. In other words, an area which is already within the extraterritorial jurisdiction of a city may not be annexed under Articles 1183–1187 without the consent of the first city; similarly, a navigation area which has been properly annexed may not later become part of another city's extraterritorial jurisdiction without the consent of the first city. This is consistent with the language of the savings clause, which states that Article 970a does not "apply to any territor[y] *held* by any city or town" under the provisions of Articles 1183–1187. (emphasis added) It does *not* say "any territory which is now held or may later be acquired."

We conclude that Nassau Bay's Ordinance 77–164 was void because the area purportedly annexed was within the extraterritorial jurisdiction of Webster and Houston.

■ Further, it does not appear that Articles 1183 through 1187 extend any annexation authority to Nassau Bay. Article 1183 provides that cities "situated along or upon navigable streams in this State, *and acting under special charters*" may annex certain land along the streams for the limited purposes of improving navigation and maintaining wharves and other related facilities. (emphasis added) Since the enactment of this statute in 1913, there have been few reported appellate decisions in this State construing it, and none have addressed the precise issue now before us.

The City of Houston, acting under its special charter, annexed certain territory along the Houston Ship Channel in 1913, pursuant to the authority granted by Articles 1183–1187. See *City of Galena Park v. City of Houston*, supra. Similar attempts by the home rule cities of Orange and Pasadena to annex territory under Articles 1183–1187 were unsuccessful. *City of Orange v. Rector*, 205 S.W. 503 (Tex.Civ.App. 1918, no writ); *City of Pasadena v. State ex rel. City of Houston*, 428 S.W.2d 388 (Tex. Civ.App.1967), rev'd, 442 S.W.2d 325 (Tex. 1969).

The threshold question of whether Article 1183 could be used by home rule cities was not reached in the above cases, nor was the issue raised in *City of Port Arthur v. Jefferson County Fresh Water Supply District No. 1*, 596 S.W.2d 553 (Tex.Civ.App.—Beaumont, 1980), or in *City of Nassau Bay v. Winograd*, 582 S.W.2d 505 (Tex.Civ.App. 1979, writ ref. n. r. e.), in which we held that Ordinance 77–194 did not authorize Nassau Bay to exercise general regulatory powers over the subject area.

In our case, the appellees have timely raised the issue, and we find their point to be well taken. The clear language of Article 1183 specifies that it applies to cities "acting under special charters." Although it has been in effect for sixty-seven years, the statute has never been amended to include home rule cities.

Nassau Bay relies on the case of *Holcombe v. Levy*, 301 S.W.2d 507 (Tex.Civ. App.1957, writ ref. n. r. e.), for the proposition that the term "special charter" includes a charter adopted pursuant to the Home Rule Amendment. That case involved the construction of V.A.C.S., Article 1200c, which created certain corporation courts. Section 5 of Article 1200c provides that "[a]ll laws and parts of laws in conflict herewith are hereby repealed to the extent of such conflict only, and this Act shall supersede any provisions of any special charters of cities which are contrary to the terms hereof." The court in *Holcombe* found that Houston, the city in question, was a special charter city and that the provision therefore was applicable to it. The court then went on to say, in dictum, that the term "special charters" *as used in Article 1200c* included home rule charters. 301 S.W.2d at 514. It did *not* say that the terms are synonymous for all purposes.

The Supreme Court of Texas, on the other hand, has repeatedly recognized that "the cities of Texas are divided into three classes by the mode of their incorporation and that a statute expressly applicable to one does not apply to the others." *Forwood v. City of Taylor*, 147 Tex. 161, 165, 214 S.W.2d 282, 285 (1948). See also *City of*

*Sherman v. Municipal Gas Co.*, 133 Tex. 324, 127 S.W.2d 193 (1939). Specifically, the Court has held that "home-rule cities are not incorporated by a special charter. The charter of a home-rule city is not a special law nor a special charter." *Huff v. City of Wichita Falls*, 121 Tex. 281, 288, 48 S.W.2d 580, 583 (1932). Since Article 1183 applies to special charter cities, and Nassau Bay is a home rule city and not a special charter city, Ordinance 77–194, which was enacted under the express authority purportedly granted by Article 1183, is void.

Nassau Bay also contends that it adopted the powers granted by Articles 1183–1187 as if they were charter provisions and that it therefore has independent charter authority to annex navigation areas. Reserving the question of whether a home rule city can confer upon itself powers granted by statute to special charter cities, it is clear that the attempted annexation is still void. It is elementary that charters and ordinances passed pursuant to charter authority cannot contain provisions inconsistent with the Constitution or general laws of the State. Tex.Const., Art. XI, Sec. 5; V.A.C.S., Art. 1165. Nassau Bay's charter cannot give it the power to annex land within the extraterritorial jurisdiction of Webster and Houston, in violation of Article 970a, Sec. 3.C.

The appellees have raised several additional reasons which they claim invalidate Nassau Bay's ordinance, including the allegations that the ordinance was fraudulently adopted, that its terms are ambiguous, that its title and caption are misleading, and that portions of the territory involved were within the corporate limits of Webster, having been previously detached under a disannexation ordinance which Webster now claims is void. Some of these points appear to be meritorious, but our holdings already stated make discussion of them unnecessary.

Affirmed.