

# The Attorney General of Texas

March 11, 1982

RK WHITE
orney General

reme Court Building
. Box 12548
tin, TX. 78711· 2548
475-2501
x 910/874-1367
copier 512/475-0266

' Main St., Suite 1400
as, TX. 75201-4709
742-8944

I Alberta Ave., Suite 160
'aso, TX. 79905-2793
'533-3484

0 Dallas Ave., Suite 202
iston, TX. 77002-6986
650-0666

Broadway, Suite 312
bock, TX. 79401-3479
747-5238

9 N. Tenth, Suite B
Allen, TX. 78501-1685
/682-4547

Main Plaza, Suite 400
I Antonio, TX. 78205-2797
/225-4191

Equal Opportunity/
rmative Action Employer

Gary E. Miller, M.D.
Commissioner
Texas Department of Mental Health
  and Mental Retardation
P. O. Box 12668
Austin, Texas    78711

Opinion No. MW-454

Re: Application of House Bill
No. 1623 to funds held by the
Texas Department of Mental
Health and Mental Retardation

Dear Dr. Miller:

You have requested our opinion regarding the application of House Bill No. 1623, recently enacted by the Sixty-seventh Legislature. That statute, to be codified as article 4394c, V.T.C.S., provides, in pertinent part:

> All fees, fines, penalties, taxes, charges, gifts, grants, donations, and other funds collected or received by a state agency as authorized or required by law shall be deposited in the state treasury, credited to a special fund or funds, and subject to appropriation only for the purposes for which they are otherwise authorized to be expended or disbursed. Deposit shall be made within seven days after the date of receipt.

Section 2 of House Bill No. 1623 defines "state agency" as:

> ...any department, commission, board, office, institution, or other agency that is in the executive branch of state government, has authority that is not limited to a geographical portion of the state, and was created by the constitution or a statute of this state, but does not include an institution of higher education as defined in Section 61.003, Texas Education Code, as amended, and does not include the Banking Department of Texas, the Savings and Loan Department of Texas, and the Office of the Consumer Credit Commissioner, whose funds are subject to the budgetary control of the Finance Commission of Texas by virtue of existing laws, and does not include the Credit Union Department

of Texas whose funds are subject to the budgetary control of the Credit Union Commission of Texas.

Section 3(b) of the bill states, however, that the act does not apply to:

(1) funds pledged to the payment of bonds, notes, or other debts if the funds are not otherwise required to be deposited in the state treasury;

(2) funds held in trust or escrow for the benefit of any person or entity other than a state agency;

(3) funds set apart out of earnings derived from investment of funds held in trust for others, as administrative expenses of the trustee agency;

(4) funds, grants, donations, and proceeds from funds, grants, and donations, given in trust to the Texas State Library and Archives Commission for the establishment and maintenance of regional historical resource depositories and libraries in accordance with Section 2A, Chapter 503, Acts of the 62nd Legislature, Regular Session, 1971, as amended (Article 5442b, Vernon's Texas Civil Statutes); or

(5) the deposit of funds for state agencies subject to review under the Texas Sunset Act (Article 5429k, Vernon's Texas Civil Statutes) for 1981, which shall be determined by each agency's enabling statute.

Acts 1981, 67th Leg., ch. 835, at 3189-90. Your question is whether any of six kinds of funds maintained by the Department of Mental Health and Mental Retardation are excepted by section 3(b) from required deposit in the state treasury.

Although articles 3179 and 3179a, V.T.C.S., provide that funds received by the institutions under the supervision of the Department of Mental Health and Mental Retardation shall be placed in the state treasury, these provisions do not apply where there is later or more specific statutory authority for holding funds outside of the treasury. See Forwood v. City of Taylor, 214 S.W.2d 282 (Tex. 1948); Cole v. State ex rel. Cobolini, 170 S.W. 1036 (Tex. 1914).

You first inquire about the "patient benefit fund" maintained at each facility of the department.  This fund consists of the interest accruing on the personal funds of inmates of which the department acts as trustee.  Section 1 of article 3183c, V.T.C.S., provides:

> Section 1.  The superintendent of any State institution under the jurisdiction of the Board for Texas State Hospitals and Special Schools may deposit any funds of inmates in his possession in any bank in the State, or in bonds or obligations of the United States of America or for the payment of which the faith and credit of the United States are pledged, and for the purposes of deposit or investment only, may mingle the funds of any inmate with the funds of other inmates.  The superintendent may deposit the interest or increment accruing on such funds in a special fund, to be designated the 'Benefit Fund,' of which he shall be the trustee.  He may expend the moneys in any such fund for the education or entertainment of the inmates of the institution, or for the actual expense of maintaining the fund at the institution.

To the extent that the benefit fund may be expended "for the education or entertainment of the inmates," it is a fund "held in trust... for the benefit of any person or entity other than a state agency" and therefore exempt under section 3(b)(2) of House Bill No. 1623.  To the extent that it may be expended "for the actual expense of maintaining the fund at the institution," it is a fund "set apart out of earnings derived from investment of funds held in trust for others, as administrative expenses of the trustee agency" and thus exempt under section 3(b)(3).

You next ask about "sheltered workshop funds."  The department is authorized by section 2.17(b)(2) of article 5547-202, V.T.C.S., "to contract with individuals or public or private entities for the sale of goods and services produced or made available by the sheltered workshop programs."  That statute further provides, in pertinent part:

> (3)  An operating fund may be established for each sheltered workshop operated by the Department, and any money derived from gifts, grants, and donations received for sheltered workshop purposes and all proceeds from the sale of sheltered workshop goods and services shall be deposited in the operating fund.  Any operating fund shall be maintained in a national or state bank which is a member of the Federal Deposit

> Insurance Corporation. Money in the operating funds may only be expended in the operation of sheltered workshops for the purchase of supplies, materials, services, and equipment; for the payment of salaries and wages to participants and employees; for the construction, maintenance, repair, and renovation of facilities and equipment; and for the establishment and maintenance of a petty cash fund not to exceed $100.

V.T.C.S. art. 5547-202, §2.17(b)(3). Although the statute recites a limited number of purposes for which sheltered workshop funds may be expended, all of them are essentially purposes of the department. Since sheltered workshop funds are not "held in trust or escrow for the benefit of any person or entity other than a state agency," they are not excepted from deposit in the state treasury.

"Occupational therapy funds" are recognized by article 3174b-3, V.T.C.S., which provides, in part:

> Section 1. The Board for Texas State Hospitals and Special Schools may furnish equipment, materials, and merchandise at any institution under the control and management of said Board for occupational therapy programs. The finished goods and products produced in these programs may be sold, and the proceeds thereof may be placed in the patients' benefit fund, patients' trust fund, or a revolving fund for their further use; or the patient may purchase from the state the material to be used and keep the finished product.
>
> . . . .
>
> Sec. 3. The Board is authorized to accept donations in money or materials to be used in these programs and may use and expend the donations in the manner requested by the donor, if not contrary to the policy of the Board for Texas State Hospitals and Special Schools.

To the extent that occupational therapy funds are placed in the patients' benefit fund or patients' trust fund, they assume the character of those funds and are thus exempt under section 3(b) of House Bill No. 1623. To the extent, however, that they are transferred to a "revolving fund for their further use," they become merely operating funds of the department and thus not excepted from

deposit.  Amounts donated to the occupational therapy fund must be used "in the manner requested by the donor."  If the donor directs that money be used "for the benefit of any person or entity other than a state agency," it need not be deposited in the state treasury; otherwise, it is not exempt from deposit therein.

The "unemployment trust fund" is established by section 55 of article V of the current General Appropriations Act.  Acts 1981, 67th Leg., ch. 875, at 3820.  Heads of state agencies are directed thereby to reimburse the comptroller for unemployment compensation benefits paid on behalf of their particular agency.  There is no indication that these funds are set aside "for the benefit of any person or entity other than a state agency," and thus, they are not exempt from deposit under House Bill No. 1623.

You also ask about "merchandise canteen coupon funds," which you state:

> ...are maintained at many facilities to hold money in trust for clients who are unable to handle their own funds.  Such clients use a system in which trust fund money is used to purchase coupons which are then used to purchase canteen items.  The canteen then turns the coupons into the fund for reimbursement.  The clients can also obtain reimbursement in cash for their coupons upon furlough or discharge or if it is determined at any time that the client can handle his own money.  The money held in this fund is used for no other purpose.

From the circumstances described, it appears that this fund is used merely as a conduit for money derived from an individual patient's trust fund.  To the extent that these funds retain the character of patient trust funds, we believe they are excepted from deposit by section 3(b)(2) of House Bill No. 1623.

Your final inquiry is directed to proceeds derived from estates.  If a legal instrument directs that funds be used specifically "for the benefit of any person or entity other than a state agency," such proceeds are exempt under section 3(b)(2).  If it does not do so, the money is not exempted.  As we said in Attorney General Opinion MW-363 (1981):

> ...no particular words are necessary to create a trust....  So long as the parties intend that particular property be held for the benefit of others, a court of equity will affix to that intent the character of a trust.

## S U M M A R Y

"Patient benefit funds" and "merchandise canteen coupon funds" are excepted from required deposit in the state treasury under the terms of section 3(b) of House Bill No. 1623, of the Sixty-seventh Legislature, to be codified as article 4394c, V.T.C.S. "Sheltered workshop funds" and "unemployment trust funds" are not so excepted. "Occupational therapy funds" are exempt only if they are placed in the patients' benefit fund or the patients' trust fund. Proceeds derived from estates are exempt if the appropriate legal instrument directs that the funds be used specifically "for the benefit of any person or entity other than a state agency."

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Roxanne Caperton
Rick Gilpin
Patricia Hinojosa
Jim Moellinger