

# THE ATTORNEY GENERAL
## OF TEXAS

May 12, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Mark W. Stiles　　　　　Opinion No.　JM-693
Chairman
County Affairs Committee　　　　　Re:　Whether the Engineering Practice
Texas House of Representatives　　Act, article 3271a, V.T.C.S., applies
P. O. Box 2910　　　　　　　　　　　to work done by licensed air condi-
Austin, Texas　　78769　　　　　　　tioning contractors under article
　　　　　　　　　　　　　　　　　　8861, V.T.C.S.

Dear Representative Stiles:

As chairman of the House Committee on County Affairs, you request our opinion regarding the proper interpretation of article 8861, V.T.C.S., the Air Conditioning Contractor License Law, and article 3271a, V.T.C.S., the Engineering Practice Act. You inform us that, in some instances, the Engineering Practice Act has been construed to apply to work done by licensed air conditioning contractors. You assert that, in some cases, air conditioning contractors have been required to obtain the seal of a registered professional engineer for design work that they have performed under the Air Conditioning Contractor License Law. You ask whether the Engineering Practice Act applies to design work performed by licensed air conditioning contractors as authorized by article 8861, V.T.C.S. Because article 8861, V.T.C.S., serves as an exception to article 3271a, V.T.C.S., with regard to "design" of air conditioning systems, we conclude that the answer is "no."

Article 8861, V.T.C.S., governs the regulation and licensure of air conditioning contractors. The commissioner of the Texas Department of Labor and Standards is empowered to adopt rules for the practice of air conditioning contracting, including, inter alia, the method and content of examinations administered under the act and insurance requirements for persons licensed under the act. V.T.C.S. art. 8861, §3. Section 4(a) of the act provides that there are two classes of air conditioning contractor licenses. A Class A license entitles the licensee to "install, repair, or alter summer or winter environmental air conditioning systems of any size or capacity." A Class B license entitles the licensee to "install, repair, or alter an environmental air conditioning system that develops a total of not more than 25 tons cooling capacity and not more than 1,500,000 British thermal units per hour output heating capacity."

Section 2 of the act sets forth the following relevant definitions:

> Sec. 2.   In this Act:
>
> . . . .
>
> (2) 'Air conditioning contractor' means a person licensed under this Act who <u>designs, installs, constructs, maintains, services, repairs, alters, or modifies</u> any heating, ventilating, or air conditioning product, system, or equipment.
>
> (3) 'Air conditioning contracting' means <u>designing, installing, constructing, maintaining, servicing, repairing, altering, or modifying</u> any heating, ventilating, or air conditioning product, system or equipment. The term does not include the design, installation, construction, maintenance, service, repair, alteration, or modification of a portable or self-contained ductless air conditioning or heating product that has a cooling capacity of three tons or less or a heating capacity of 36,000 British thermal units or less.
>
> . . . .
>
> (5) 'Person' means an individual.
>
> (6) 'Air conditioning maintenance work' means repair work and all other work required for the continued normal performance of a heating, ventilating, or air conditioning system. The term does not include the installation of a total replacement of the system or the installation of boilers or pressure vessels that must be installed by licensed persons pursuant to rules and regulations promulgated by the Texas Department of Labor and Standards under the Texas boiler inspection law, Chapter 436, Acts of the 45th Legislature, Regular Session, 1937 (Article 5221c, Vernon's Texas Civil Statutes). (Emphasis added).

Section 6 specifically exempts persons who are licensed as professional engineers from the licensing requirements of article 8861, V.T.C.S. It further provides that no person licensed under article 8861 may perform or offer to perform any act, service, or function

that is defined as the practice of engineering by the Engineering Practice Act:

> Sec. 6. (a) This Act does not apply to a person who:
>
> . . . .
>
> (6) performs air conditioning maintenance work if the person is licensed as a professional engineer under The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), the work is performed in connection with the business in which the person is employed, and the person does not engage in the occupation of air conditioning contracting for the general public.
>
> . . . .
>
> (c) A person licensed under this Act may not perform or offer or attempt to perform any act, service, or function that is defined as the practice of engineering by The Texas Engineering Practice Act, as amended (Article 3271a, Vernon's Texas Civil Statutes). This Act does not apply to a person licensed in this state as a professional engineer and engaged in business as a professional engineer. (Emphasis added).

The Engineering Practice Act, article 3271a, V.T.C.S., creates the State Board of Registration for Professional Engineers and provides for the licensing and regulation of professional engineers. Section 1.2 of the act prohibits certain conduct or the performance of certain acts by persons not duly licensed by the board:

> Sec. 1.2. From and after the effective date of this Act, unless duly licensed and registered in accordance with the provisions of this Act, no person in this state shall:
>
> (1) Practice, continue to practice, offer or attempt to practice engineering or any branch or part thereof.
>
> . . . .
>
> (4) Receive any fee or compensation or the promise of any fee or compensation for performing, offering or attempting to perform any service,

work, act or thing which is any part of the practice of engineering as defined by this Act.

Within the intent and meaning and for all purposes of this Act, any person, firm, partnership, association or corporation which shall do, offer or attempt to do any one or more of the acts or things set forth in numbered paragraphs (1), (2), (3), or (4) of this Section 1.2 shall be conclusively presumed and regarded as engaged in the practice of engineering.

Section 2(4) of the act contains an extremely broad definition of the practice of engineering:

'Practice of engineering,' or 'practice of professional engineering' shall mean any service or creative work, either public or private, the performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical, or engineering sciences to such services or creative work.

Section 20 of the Engineering Practice Act sets forth exemptions from its reach and provides the following in part:

Sec. 20. The following persons shall be exempt from the provisions of this Act, provided that such persons are not represented or held out to the public as duly licensed and registered by the Board to engage in the practice of engineering:

. . . .

(e) Nothing in this Act shall be construed to apply to persons doing the actual work of installing, operating, repairing, or servicing locomotive or stationary engines, steam boilers, Diesel engines, internal combustion engines, refrigeration compressors and systems, hoisting engines, electrical engines, air conditioning equipment and systems, or mechanical and electrical, electronic or communications equipment and apparatus; nor shall this Act be construed to prevent any citizen from identifying himself in the name and trade of any engineers' labor organization with which he may be affiliated. Provided, however, that nothing in this Act shall

> be construed as permitting any person other than a licensed professional engineer affixing his signature as such to engineering plans, or specifications.  (Emphasis added).

It is clear that, by the very terms of the Engineering Practice Act, persons who install, operate, repair, or service air conditioning equipment and systems do not fall within its reach.  It is not so clear, however, with regard to persons who "design" such systems. Article 8861, V.T.C.S., specifically includes persons who design such systems within its definition of "air conditioning contractor."  Also, the act specifically prohibits its licensees from engaging in or offering to engage in any practice that is defined as the practice of engineering by the Engineering Practice Act.  The conflict arises with respect to the expansive definition of "practice of engineering" set forth in section 2(4) of the Engineering Practice Act. It is suggested that "practice of engineering" is sufficiently broad to include within its ambit the "design" of air conditioning systems.  As a matter of law, absent the Air Conditioner Contracting License Law, the design of such systems would fall within the Engineering Practice Act.  You suggest that, since the more specific act passed after the more general Engineering Practice Act, the Air Conditioning Contractor License Law serves as an exception to the Engineering Practice Act. We agree.

We are required to construe the two statutes in such a way that both, if possible, will be effective; they must be construed in pari materia.  Calvert v. Fort Worth National Bank, 356 S.W.2d 918, 921 (Tex. 1962); Conley v. Daughters of the Republic, 156 S.W. 197, 201 (Tex. 1913).  The specific statute will control over the general. State v. Mauritz-Wells Co., 175 S.W.2d 238 (Tex. 1943); San Antonio & A.P. Railway Co. v. State, 95 S.W.2d 680 (Tex. 1936).

> The general rule is that when the law makes a general provision, apparently for all cases, and a special provision for a particular class, the general must yield to the special in so far as the particular class is concerned. [Citation omitted]. This rule is based upon the principal that all acts and parts thereof must stand, if possible, each occupying its proper place, and that the intention of the Legislature is more clearly reflected by a particular statute than by a general one.  Accordingly, a specific act is properly regarded as an exception to, or qualification of, a general law on the same subject previously enacted.  In such a case both statutes are permitted to stand, the general one being

applicable to all cases except the particular one embraced in the specific act. [Citation omitted].

Sam Bassett Lumber Co. v. City of Houston, 198 S.W.2d 879, 881 (Tex. 1947); see also Forwood v. City of Taylor, 214 S.W.2d 282 (Tex. 1948). The Engineering Practice Act was first enacted in 1937. The act was amended in 1961 to define "practice of engineering." Acts 1961, 57th Leg., ch. 282, at 590. The Air Conditioning Contractor License Law was first enacted in 1983. Acts 1983, 68th Leg., ch. 555, at 3228. The relevant provisions have not been amended since the act's passage.

We conclude that, with respect to the design of air conditioning systems that licensed air conditioning contractors are permitted to perform under article 8861, V.T.C.S., serves as an exception to the Engineering Practice Act. Accordingly, the Engineering Practice Act, article 3271a, V.T.C.S., does not apply to design work performed by licensed air conditioning contractors under article 8861, V.T.C.S., the Air Conditioning Contractor License Law.

## S U M M A R Y

The Engineering Practice Act, article 3271a, V.T.C.S., does not apply to design work done by licensed air conditioning contractors under article 8861, V.T.C.S., the Air Conditioning Contractor License Law.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General